IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **BEATRICE BATTLE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:20-cv-901-CWB |
| | ) |
| **ALLSTATE INDEMNITY COMPANY,** | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION & ORDER**

Beatrice Battle filed this action in the Circuit Court of Barbour County, Alabama on September 30, 2020 (Doc. 1-1), and Allstate Indemnity Company timely removed proceedings to this court on November 5, 2020 (Doc. 1). Pursuant to 42 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, both parties thereafter consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 9 & 10). Now ripe for determination is a motion for summary judgment filed by Allstate (Doc. 31), which has been fully briefed (Docs. 32, 40 & 45). For the reasons set forth below, the court finds that summary judgment is due to be granted in part and denied in part.

**I.    Jurisdiction and Venue**

Subject matter jurisdiction is conferred by 28 U.S.C. § 1332, as the record reflects that complete diversity of citizenship exists between Battle and Allstate (Doc. 1-1 at ¶¶ 1-2) and that the amount in controversy exceeds $75,000 exclusive of interest and costs (Doc. 1-3). The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391; Fed. R. Civ. P. 4(k)(1)(A).

1

## II.     Factual Background

Battle purchased a 2003 Waverlee mobile home in March 2004 and placed it upon property located in Eufaula, Alabama. (Doc. 32 at p. 3, ¶ 4; Doc. 42 at p. 2, ¶ 4). Allstate insured the mobile home under a Manufactured Home Policy. (Doc. 32 at p. 2, ¶ 1; Doc. 42 at p. 1, ¶ 1). The mobile home was damaged by fire on October 1, 2018. (Doc. 32 at p. 2, ¶ 1; Doc. 42 at p. 1, ¶ 1).

### A.     Investigation of Loss

On October 3, 2018, just two days after the fire and one day after Battle reported the loss to Allstate, Battle entered into a contract with Rainbow International Restoration to perform cleanup and restoration services. (Doc. 32 at p. 4, ¶¶ 8-9; Doc. 42 at p. 2, ¶¶ 8-9). However, the record reflects that Rainbow had been selected by Allstate (Doc. 43-5 at p. 4) and coordinated with Allstate throughout the restoration process (*Id.* at pp. 8-9).

Allstate additionally arranged the services of CRDN to assess, clean, and restore Battle's personal property. (*Id.* at p. 9). Unlike with Rainbow, the record is devoid of evidence as to any written contract with CRDN. CRDN deemed all of the electronics in Battle's mobile home to be "non-salvageable" and disposed of them. (Doc. 43-5 at pp. 13-14). Battle has testified that she did not direct CRDN as to what items to remove, retain, or discard. (Doc. 33-4 at p. 27).

Also within days of the loss, Allstate retained fire inspector Ronald Blankenship of Rimkus Consulting Group, Inc. to investigate the fire's origin and cause. (Doc. 32 at p. 4, ¶ 10; Doc. 42 at p. 2, ¶ 10). Blankenship visited Battle's mobile home on October 5, 2018. (Doc. 32 at p. 4, ¶ 10; Doc. 42 at p. 2, ¶ 10). Blankenship inspected the damage, took photographs, and collected samples for analysis. (Doc. 32 at pp. 4-5, ¶¶ 10-11). The ensuing tests, which were conducted by Forensic and Scientific Testing, Inc. Laboratory, determined that 4 of the 5 samples

were positive for weathered gasoline. (Doc. 33-6 at p. 35). Based on the lab results and his personal inspection, Blankenship concluded that the fire had been intentionally set:

> It was determined, based on the observed patterns of fire damage and a systematic evaluation of the remaining physical evidence, that there were three separate non-communicating fires. One fire originated in the northeast bedroom, one in the north hallway bathroom, and one in the laundry room. The specific ignition sequence and cause of the fire were determined to be the direct result of an unknown individual(s) igniting gasoline in the areas of origin with an open flame-type device. The cause of the fire was classified as incendiary.

(Doc. 33-6 at p. 9).

Although Blankenship opined that the fire was the result of arson, neither the Baker Hill Fire Department nor the Alabama State Fire Marshal's Office reached the same affirmative conclusion. (Doc. 43-11 at p. 4; Doc 43-12 at p. 2). The Baker Hill Fire Department listed the cause of the fire as "undetermined." (Doc. 33-6 at p. 28). The report of the State Fire Marshal similarly expressed that "[t]his office was unable to conduct a fire scene examination due to a time factor and contamination of the scene" but that "[t]he follow up investigation by this office did not reveal any evidence to the fact that Mrs. Battle or anyone else intentionally set this fire or fires." (Doc. 43-12 at p. 2). The evidence also was insufficient for the District Attorney to present the matter to the grand jury for a potential criminal indictment. (*Id.*).

At Allstate's request, Battle submitted a Sworn Proof of Loss, provided a recorded statement, and sat for an examination under oath by an Allstate-retained attorney, Mark Spear. (Doc. 32 at p. 5, ¶¶ 13-14; Doc. 42 at p. 3, ¶¶ 13-14). In every statement she provided, including her later deposition, Battle denied starting the fire. (Doc. 33-2 at p. 76; Doc. 33-4 at p. 11; Doc. 43-1 at pp. 75, 107-09; Doc. 43-3 at p. 1).

Battle's Sworn Proof of Loss listed the amount of her personal property as $51,925.46. (Doc. 33-10 at p. 5). In bankruptcy documents filed on July 10, 2014, however, Battle had identified the total value of her personal property as $630.00. (Doc. 33-12 at pp. 11-12).

### B.      Denial of Coverage

In reviewing the evidence, attorney Spear opined that Battle had both the opportunity and the motive to initiate the fire: "The insured was in the house when it was set on fire"; "The most apparent motive is the windfall Ms. Battle would receive from the payment of her insurance claim. Ms. Battle walked out of her long-time job and was considered not eligible for re-hire." (Doc. 33-9 at pp. 6-10, 17). Spear additionally noted that the circumstances surrounding the fire were consistent with Battle as the perpetrator: "The fire was incendiary in nature and all other possible causes have been eliminated"; "At the time of the fire, the only persons having keys to the home was Ms. Battle and her daughter who lived in Montgomery, AL." (*Id.* at pp. 12, 17). Given those observations, along with the conclusion that Battle had misrepresented her personal property loss, Spear recommended that Allstate deny Battle's claim. (*Id.* at p. 16).

In its denial letter dated April 9, 2019, Allstate informed Battle as follows:

> Our investigation revealed the fire was intentionally set, and [Battle] had the opportunity and motive to cause it. Furthermore, material misrepresentations made by Beatrice Battle concerning the cause of the fire, the items claimed in the loss, and her financial status have been made.

(Doc. 33-13 at p. 2). Battle subsequently commenced this action on September 30, 2020. (Doc. 1-1).

### III.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet its burden by presenting evidence to show that there is no genuine dispute of material fact or by asserting that the nonmovant has failed to present evidence in support of some element on which it bears the ultimate burden of proof. *Id.* at 322-24. If the movant fails to satisfy its initial burden in that regard, summary judgment must be denied. *See Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012), *cert. den.*, 133 S. Ct. 1810 (2013); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding the moving party has the initial burden).

If the movant adequately supports its motion, the burden then shifts to the nonmovant to establish, "by producing affidavits or other relevant and admissible evidence beyond the pleadings," a genuine dispute of material fact. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011); *see also* Fed. R. Civ. P. 56(c)(1)(A). However, the nonmovant "'must do more than show that there is some metaphysical doubt as to the material facts,'" and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Graham v. State Farm Mut. Ins.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (internal citations omitted).

In evaluating whether summary judgment is appropriate, the court views the evidence and all reasonable inferences in the light most favorable to the nonmovant. *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1316 (11th Cir. 2012). Nonetheless, "[i]f no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (citation and internal quotation marks omitted).

**IV.     Discussion**

The Complaint sets out four claims for relief. (Doc. 1-1). First, Battle alleges that Allstate breached the underlying insurance agreement. (*Id.* at p. 3). Second, Battle alleges that Allstate violated its implied obligation of good faith and fair dealing. (*Id.* at pp. 4-5). Third, Battle alleges that Allstate engaged in bad faith. (*Id.* at pp. 5-6). And finally, Battle alleges that Allstate converted her personal property during the post-fire cleanup efforts. (*Id.* at p. 6).

Allstate contends that it is entitled to summary judgment on all claims. (Doc. 32). As detailed below, the court agrees with Allstate except as to Battle's claim for breach of contract.[1]

**A.     Breach of Contract (Count I)**

Count I of the Complaint seeks recovery for breach of contract. (Doc. 1-1 at p. 3). Under Alabama law, a plaintiff asserting a claim for breach of contract must prove: "(1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Dupree v. PeoplesSouth Bank*, 308 So. 3d 484, 490 (Ala. 2020) (quoting *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009)) (internal quotation marks omitted).

**1.     There is a genuine dispute of material fact as to whether the fire resulted from arson committed by Battle.**

The court finds there to be a genuine dispute of material fact regarding the cause of the fire, namely, whether the fire resulted from arson committed by Battle. Allstate asserts that it has presented a *prima facie* case of arson and that summary judgment thus should be entered. (Doc. 32 at pp. 12-15). In response, however, Battle has cited competing evidence that she was

---

[1] Because this is a diversity action based on state law contract and tort theories, the court will apply Alabama substantive law. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Eres v. Progressive Am. Ins.*, 998 F.3d 1273, 1278 n.4 (11th Cir. 2021).

6

not in financial distress (Doc. 40 at p. 10), that a third party recently had made threats toward her (*id*. at p. 2), and that she had experienced issues with her electrical breakers on the day of the fire (*id*. at pp. 2, 9). It also must be acknowledged that the official report by the Baker Hill Fire Department did not contain any indication of suspected arson (Doc. 33-6 at p. 28) and that a formal investigation by the Alabama State Fire Marshal's Office, albeit belated, likewise "did not reveal any evidence [of arson]." (Doc. 43-12 at p. 2). Perhaps most importantly for purposes of summary judgment, Battle at every opportunity has been consistent in her denial of setting the fire. (Doc. 33-2 at p. 76; Doc. 33-4 at p. 11; Doc. 43-1 at pp. 75, 107-09; Doc. 43-3 at p. 1). Ultimately it is for the jury, not the court, to weigh all of the competing evidence and reach a conclusion as to how the fire began. *See Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016) ("We do not weigh conflicting evidence or make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment.").[2]

    **2.    There is a genuine dispute of material fact as to whether Battle made a misrepresentation regarding the value of her personal property with the intent to deceive Allstate.**

Allstate next contends that summary judgment should be granted because Battle intentionally misrepresented the value of her personal property. (Doc. 32 at p. 16). In support of its argument, Allstate highlights that Battle listed certain values in her 2014 bankruptcy petition that differ materially from the values listed in her Sworn Proof of Loss. (*Id*. at p. 6). Battle in turn responds that the disclosures in the bankruptcy petition were based on "current value" versus the "replacement value" used in her Sworn Proof of Loss. (Doc. 40 at pp. 5-6). In her deposition, Battle further explained the discrepancy as follows:

---

[2] The court notes that none of the cases cited by Allstate for discussion of the elements of an arson defense resolved the issue by finding arson to have been proven as a matter of law.

> Q      Okay. As an example, if there was a washer and dryer listed in the bankruptcy court as worth $50, but it was listed in the fire loss as worth $1300, do you know why there would be such drastic differences?
>
> A      According to Marlon Burrell, he informed me that I had replacement cost of the contents of my home. He said that if I did not have receipts of the contents of the items in my home, he said to go online and do a like product to the contents of the furniture and everything in my home and list it at the price today. That's what I was told to do.
>
> Q      So it's your testimony that you were told to go get current prices and not to place a value on your property, but just to list a current price?
>
> A      He said that I had replacement costs on the items in my home, and if I did not have the receipts, to go online or to stores or whatever and look at a like product of the price it was today, and he would discount those items 25 percent off of the price it was today. That's what he told me.

(Doc. 33-2 at pp. 88-89).

At this stage of the proceedings, the court is bound to view the evidence in a light most favorable to Battle. *See Wate*, 839 F.3d at 1018 ("In ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.") (internal quotation marks and brackets omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014)). Application of that standard compels a finding that a genuine issue of material fact exists as to whether Battle made a misrepresentation and, if so, whether it satisfied the requisite "intent to deceive" necessary to defeat or void coverage under Alabama law. *See* Ala. Code § 27-14-28 ("No misrepresentation in any proof of loss under any insurance policy shall defeat or void the policy <u>unless such misrepresentation is made with actual intent to deceive</u> as to a matter material to the insured's rights under the policy.") (emphasis added).

      **3.**      **Battle is not judicially estopped from asserting her breach of contract claim.**

"The doctrine of judicial estoppel generally applies to preclude a party from assuming a position in one legal proceeding that is inconsistent with a position it has previously asserted."

*Dobson v. Vick*, 27 So. 3d 469, 476 (Ala. 2009).³  The Alabama Supreme Court has identified three elements as being necessary for application of judicial estoppel:

> For judicial estoppel to apply, (1) a party's later position must be clearly inconsistent with its earlier position; (2) the party must have been successful in the prior proceeding so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and (3) the party seeking to assert an inconsistent position must derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 476-77 (cleaned up) (quoting *Middleton*, 979 So. 2d at 60-61) (internal citations omitted).

Here, the judicial estoppel analysis begins and ends with whether Battle has taken a position that is "clearly inconsistent" to that taken in her 2014 bankruptcy case.  As noted above, Battle testified that she was following direct instructions when filling out her Sworn Proof of Loss and was told to ascertain values by finding comparable new products at retail outlets.  (Doc. 33-2 at pp. 88-89).  Accepting such testimony as true, it would follow that Battle believed the item values listed in her Sworn Proof of Loss should be determined in a manner that differed from the manner in which she had been instructed to complete her bankruptcy petition.  (*Id.*; Doc. 33-12 at pp. 11-12).  Under the circumstances presented, it cannot be said that Battle has taken clearly inconsistent positions as to the value of her personal property such that she should be judicially estopped from proceeding on her claim for breach of contract.⁴

---

³ The Eleventh Circuit has held that the doctrine of judicial estoppel is substantive.  *See Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc.*, 44 F.3d 925, 930 (11th Cir. 1995); *see also Eres*, 998 F.3d at 1278 n.4.  Although the Alabama Supreme Court has disagreed and has found that judicial estoppel is a procedural rule, *Middleton v. Caterpillar Indus., Inc.*, 979 So. 2d 53, 60 (Ala. 2007), this court is controlled by the precedent of the Eleventh Circuit and will apply Alabama's judicial estoppel standards.

⁴ The court is mindful of Allstate's argument that the underlying insurance policy appears to provide only for payment of "actual cash value" unless and until Battle replaces the items of personal property.  (Doc. 45 at pp. 6-8).  Although such a provision might limit the amount that Battle potentially is entitled to recover, it is not sufficient to support an argument for judicial estoppel on the facts presented.

### B.   Bad Faith (Counts II & III)

The court finds that Battle's claim for breach of the implied obligation of good faith and fair dealing (Count II) presents the same cause of action as her claim for bad faith (Count III). *See Gulf Atl. Life Ins. Co. v. Barnes*, 405 So. 2d 916, 924 (Ala. 1981) ("Bad faith is the intentional failure by an insurer to perform the duty implied by law of good faith in fair dealing."). To state a claim for bad faith under Alabama law, a plaintiff must demonstrate the following:

> (a) an insurance contract between the parties and a breach thereof by the defendant; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason; (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*Nucor Steel Tuscaloosa, Inc. v. Zurich Am. Ins.*, 343 So. 3d 458, 474 (Ala. 2021) (internal quotation marks omitted) (quoting *Crook v. Allstate Indem. Co.*, 314 So.3d 1188, 1197 (Ala. 2020)).

Allstate seeks summary judgment by asserting that it possessed a reasonably legitimate or arguable reason for denying Battle's claim. (Doc. 32 at p. 20). Allstate emphasizes that it conducted a thorough investigation, which included hiring a fire inspector, conducting lab tests, and seeking the advice of counsel. (*Id.* at pp. 20-23). Battle conversely contends that Allstate engaged in an investigation solely for the purpose of denying her claim and not to determine the actual cause of the fire. (Doc. 40 at pp. 19-20). Battle further contends that the investigation was not sufficient because Allstate denied her claim before reviewing the recording of her 911 call. (*Id.* at p. 20). With respect to Allstate's purported reliance on the advice of counsel, Battle argues that the coverage opinion was unreliable in that attorney Spear did not have the 911 recording prior to reaching his conclusions. (*Id.* at pp. 20-21).

10

The court finds the record insufficient to support Battle's claim for bad faith. "[W]here a legitimate dispute exists as to liability, ... a tort action for bad faith refusal to pay a contractual claim will not lie." *Bowers v. State Farm Mut. Auto. Ins. Co.*, 460 So. 2d 1288, 1290 (Ala. 1984). As set out above, genuine issues of material fact abound with respect to Battle's claim for breach of contract. *See S & W Properties, Inc. v. American Motorists Ins. Co.*, 668 So. 2d 529, 533 (Ala. 1995) (affirming summary judgment on bad faith claim where genuine issues of material fact existed as to how fire began). The potentially implicating circumstances surrounding the fire simply cannot be ignored, *i.e.*, Battle was home alone when the fire started (Doc. 32 at p. 3, ¶ 7; Doc. 42 at p. 2, ¶ 7), there was no sign of forced entry (Doc. 33-6 at p. 7), only Battle and her daughter possessed keys to the mobile home (Doc. 32 at p. 4, ¶ 7; Doc. 42 at p. 2, ¶ 7), and Battle was out of work on short-term disability. (Doc. 32 at p. 3, ¶ 5; Doc. 42 at p. 2, ¶¶ 5-6). *See, e.g., Alfa Mut. Ins. Co. v. Smith*, 540 So. 2d 691, 695 (Ala. 1988) (reversing and rendering judgment for the insurer on claim of bad faith: "[T]he fact … that arson was the suspected nature of the fire, would be sufficient justification for ALFA to deny Smith coverage … ."); *State Farm Fire & Cas. Co. v. Balmer*, 672 F. Supp. 1395, 1405 (M.D. Ala. 1987) ("Since arson and/or misrepresentation are in and of themselves lawful bases upon which to deny a claim, … , State Farm cannot, as a matter of law, be found to have acted in bad faith.").

The record further reflects that Allstate promptly initiated an investigation into the origin and cause of the fire. The Allstate-retained fire inspector was on the scene within four days and conducted a comprehensive examination. (Doc. 32 at p. 4, ¶ 10; Doc. 42 at p. 2, ¶ 10). The examination led the inspector to conclude that the damage resulted from three separate non-communicating fires. (Doc. 33-6 at p. 9). Lab results were performed on samples taken from the scene and confirmed the presence of weathered gasoline in the areas of origin. (Doc. 32 at pp. 4-

5, ¶¶ 10-11; *see also id.* at p. 6: "The burn pattern was irregularly shaped and was later confirmed by laboratory analysis to be an ignitable liquid pour pattern."). The inspector thus opined that the fire was "incendiary" and "the direct result of an unknown individual(s) igniting gasoline in the areas of origin with an open flame-type device." (Doc. 33-6 at p. 9). Allstate further sought professional evaluation of its obligations and followed that resulting legal advice. (Docs. 33-9 & 33-13). *See Davis v. Cotton States Mut. Ins. Co.*, 604 So. 2d 354 (Ala. 1992) ("Crucial to the insurers' showing that they did not act in bad faith is their employment of a lawyer in private practice to research the coverage of the motor vehicle.").

Although she contends that Allstate's investigation of her claim was defective because Allstate did not have access to or rely upon the 911 recording, Battle has not placed the 911 recording into the record or otherwise explained how its contents would undermine Allstate's reasonably legitimate or arguable basis for denial. The standard for a bad faith claim is lofty and requires more than a simple error. *See Singleton v. State Farm Fire & Cas. Co.*, 928 So. 2d 280, 283 (Ala. 2005) ("Bad faith … is not simply bad judgment or negligence. It imports a dishonest purpose and means a breach of a known duty, i.e., good faith and fair dealing, through some motive of self-interest or ill will.") (quoting *State Farm Fire & Cas. Co. v. Slade,* 747 So. 2d 293 (Ala. 1999)); *see also Dempsey v. Auto Owners Ins. Co.*, 717 F.2d 556, 560 (11th Cir. 1983) (to state a bad faith claim, a "plaintiff must go beyond a mere showing of nonpayment and prove ... a nonpayment without any reasonable ground for dispute") (citing *National Sec. Fire & Cas. Co. v. Bowen*, 417 So.2d 179, 183 (Ala. 1982)). Here, the record reflects that Allstate acted prudently in investigating Battle's claim without any suggestion that the claim ultimately was denied in bad faith. Put most simply, "[w]hen a claim is 'fairly debatable,' the insurer is entitled to debate it." *Bowen*, 417 So. 2d at 183.

### C. Conversion (Count IV)

Count IV of the Complaint alleges that Allstate converted Battle's personal property "by hiring a restoration company to collect [personal] property from Plaintiff's damaged home." (Doc. 1-1 at p. 6). Battle more specifically contends that, "[a]t the authorization of [Allstate], Plaintiff's personal property was discarded," and that Allstate has not reimbursed her for such "wrongful interference and destruction of [her] personal property[.]" (*Id.*). Allstate seeks summary judgment on the basis that it took no direct actions with respect to Battle's personal property. (Doc. 32 at pp. 25-26).

To succeed on a claim for conversion under Alabama law, a plaintiff must show that the defendant exercised dominion over the plaintiff's property in defiance of the plaintiff's ownership rights. *See McGee v. McGee*, 91 So. 3d 659, 667 (Ala. 2012) (citing *Young v. Norfolk S. Ry.*, 705 So.2d 444, 446 (Ala. Civ. App. 1997)). The record demonstrates that it would have been one or both of the involved restoration companies, *i.e.*, Rainbow and CRDN, who removed and discarded personal property from Battle's mobile home. Although she now asserts that those entities should be deemed agents of Allstate (Doc. 42 at pp. 26-29), Battle did not plead agency or vicarious liability in the Complaint (Doc. 1-1). Battle may not at the summary judgment stage assert such new legal theories. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.") (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)).

Even were the court to consider the merits of an agency or vicarious liability theory, it would lead to the same outcome. It is well settled that vicarious liability requires a plaintiff to show that "the entity for whom the work is being performed has reserved the right of control over the means by which the work is done." *Donaldson v. Country Mut. Ins.*, 291 So. 3d 1172, 1175

(Ala. 2019) (internal quotation marks and emphasis omitted) (quoting *Shaw v. C.B. & E., Inc.*, 630 So. 2d 401, 403 (Ala. 1993)).  Battle has submitted no evidence that Allstate had any right of control over how either Rainbow or CRDN performed services.  Bare allegations without factual support are insufficient to survive summary judgment.

**V.     Conclusion**

For the reasons set forth above, it is hereby ORDERED as follows:

- Allstate's Motion for Summary Judgment (Doc. 31) is GRANTED as to Counts II, III, and IV of the Complaint; and

- Allstate's Motion for Summary Judgment (Doc. 31) is DENIED as to Count I of the Complaint.

DONE this the 2nd day of February 2023.

_____
**CHAD W. BRYAN
UNITED STATES MAGISTRATE JUDGE**